IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID ALLEN REINHARDT,        *

     Plaintiff                *

        v                   *        Civil Action No. DKC-18-3490

WEXFORD HEALTH SOURCE, INC.,    *

     Defendant             *
                          ***

## MEMORANDUM OPINION

In response to this civil rights complaint Defendant Wexford Health Source, Inc., filed a motion to dismiss or for summary judgment. ECF No. 15. Plaintiff also filed a motion for summary judgment (ECF No. 17) which is opposed by Defendant (ECF No. 18). No hearing is necessary to determine the matters pending. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendant's motion, construed as a motion for summary judgment, will be granted and Plaintiff's motion will be denied.

## Background

Plaintiff David Allen Reinhardt, an inmate committed to the custody of the Department of Public Safety and Correctional Services and formerly confined at Western Correctional Institution ("WCI"),[1] alleges in his complaint that his request for treatment and accommodation for his lower back pain was not properly addressed by providing him a lower bunk assignment and pain management measures including medication and/or a cane. ECF No. 1 at 2. Specifically, he claims that he filed a sick call slip on September 17, 2018, to be seen for bottom bunk assignment because he was experiencing pain and numbness in his right leg that extended from his hip to his toe. *Id.*

---

[1]    Mr. Reinhardt is currently confined at Eastern Correctional Institution.

When he was seen two weeks later, after filing another sick call slip, he was not seen by a provider. While he did not receive a bottom bunk assignment order, he did receive medication for the pain. *Id.*

On February 17, 2017, an x-ray performed at Jessup Correctional Institution (JCI) revealed that Mr. Reinhardt has deteriorating discs in his back that are impinging on his sciatic nerve, causing numbness and pain in his right leg. *Id.* Mr. Reinhardt states he was told this deterioration was a function of aging. *Id.*

As relief, Mr. Reinhardt seeks monetary damages and a declaratory judgment stating that he should be provided with a bottom bunk and given proper pain management treatment, and a policy should be in place requiring a provider to see inmates for the first sick call request submitted. *Id.* at 3.

The sole Defendant named in the complaint, Wexford Health Source, Inc. ("Wexford"), was the private medical care contractor for the Maryland DPSCS, but as of January 1, 2019, no longer serves in that capacity as the contract was awarded to Corizon Health. In support of Wexford's dispositive motion, Dr. Asresahegn Getachew[2] provides an affidavit summarizing the care provided to Mr. Reinhardt for his complaint of lower back pain (ECF No. 15-5) as well as relevant medical records (ECF No. 15-4). Wexford maintains that the conservative course of care provided to Mr. Reinhardt and outlined below does not support an Eighth Amendment claim. ECF No. 15.

---

[2] Dr. Getachew is the Medical Director for North Branch Correctional Institution and WCI and bases his affidavit on a review of Mr. Reinhardt's medical records. ECF No. 15-5 at 1, ¶¶ 1, 2. Dr. Getachew erroneously states that Mr. Reinhardt was incarcerated at North Branch Correctional Institution. *Id.* at ¶3. The error is not material to the operative facts asserted in the complaint or the dispositive motion.

Dr. Getachew acknowledges that Mr. Reinhardt has a history of lower back pain with pain and numbness radiating to his right leg and foot. ECF No. 15-5 at 1, ¶ 3. He states that the February 10, 2017, x-ray "indicated mild degenerative changes" which are "unremarkable and a natural consequence of aging in all individuals." *Id.* at 2-3, ¶5; ECF No. 15-4 at 30 (x-ray report). The doctor states that the cause of Mr. Reinhardt's radiculopathy is unknown; he did not report trauma that caused his lower back pain. ECF No. 15-5 at 3, ¶5. The medical record, however, indicates that Mr. Reinhardt did report that his back pain started approximately six months before the initial encounter with a "twisting motion" when "avoiding a big box that hit him on the chest." ECF No. 15-4 at 3 (Feb. 8, 2017 Provider Sick Call). A test performed to determine if there is inflammation of the sciatic nerve involving a straight leg raising proved positive when performed on Mr. Reinhardt. ECF No. 15-5 at 3, ¶5; ECF No. 15-4 at 8 (noting "straight leg raise positive: 30 degrees of R foot"). In addition, Mr. Reinhardt's lumbar spine is "tender to palpation." ECF No. 15-5 at 3, ¶5.

The attempts to address Mr. Reinhardt's pain have included medications such as Cymbalta, Tegretol, Glucosamine Chondroitin, and Mobic as well as ice, heat, and capsaicin cream. ECF No. 15-5 at 3, ¶5. Further, Mr. Reinhardt was provided with physical therapy sessions that included strength and range of motion exercises. *Id.*; *see also* ECF No. 15-4 at 32 (Dec. 15, 2017 Provider Sick Call noting plan to order Medrol Dosepak[3] and referral to Physical Therapy); 35 (Dec. 15, 2017 referral to physical therapy); 37, 42-46 (physical therapy sessions); 55 (May 20, 2018 referral to physical therapy); 60-64, 69-70 (physical therapy sessions). Dr. Getachew acknowledges that the treatment provided has not eradicated Mr. Reinhardt's pain and states that

_____

[3] "Medrol Dosepak" or methylprednisone, is a steroid that prevents the release of substances in the body that cause inflammation. https://www.drugs.com/mtm/medrol-dosepak.html (last viewed Nov. 7, 2019).

"[i]t is possible that [he] may never attain complete relief from his [lower back pain]." ECF No. 15-5 at 3, ¶5.

According to Dr. Getachew, Mr. Reinhardt has "lately been requesting to be prescribed Neurontin" to address his pain. *Id.* at ¶6, *see also* ECF No. 15-4 at 52 (May 20, 2018 Provider Sick Call, discussed prescription for Tegretol in lieu of Neurontin "as this is in the same class of meds as Neurontin"); 84 (Nov. 21, 2018 Provider Sick Call, noting discussion of effectiveness of Neurontin in addressing neuropathic pain). His requests have been denied because "Neurontin has been deemed a drug of abuse, and increasing patterns of overuse and abuse have been observed within DPSCS." ECF No. 15-5 at 3, ¶6. Dr. Getachew further explains that "DPSCS has determined to eliminate its use for non-FDA approved conditions absent exceptional circumstances."[4] *Id.* Because Neurontin is "FDA approved as an anticonvulsant and for treatment of neuropathic pain (nerve pain) caused by herpes virus or shingles" and as Mr. Reinhardt has neither a seizure disorder nor nerve pain caused by herpes or shingles, his condition does not warrant a prescription for Neurontin. *Id.*

An order for a bottom bunk assignment for six months was noted during a visit that occurred on May 30, 2017. ECF No. 15-4 at 14. However, on September 22, 2017, four months after the six-month order was allegedly issued, it is noted that Mr. Reinhardt was "currently on top bunk and that is exacerbating his pain." *Id.* at 21. A one-year order for bottom bunk status is noted as completed during that encounter. *Id.* at 22 ("bottom bunk x 1 yr ex: 9/22/2018). It is unclear whether the bottom bunk assignment order was actually issued in May, or whether it was not followed by correctional staff; Mr. Reinhardt does not raise any allegations concerning this discrepancy.

---

[4] An explanation of what constitutes "exceptional circumstances" is not provided.

Regarding Mr. Reinhardt's request for renewal of his bottom bunk assignment submitted on September 17, 2018, Dr. Getachew admits that "for unexplained reasons [Mr. Reinhardt] was not seen by a provider until November 21, 2018." ECF No. 15-5 at 3, ¶8. The written record for the November 21, 2018 encounter does not include any reference to a bottom bunk assignment. *Id.*, *see also* ECF No. 15-4 at 84 (Nov. 21, 2018 Provider Sick Call for medication renewal). Following that encounter up to and including January 2, 2019, when Mr. Reinhardt was transferred from WCI, no further sick call requests regarding bottom bunk assignment were received from Mr. Reinhardt. *Id.*

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia*

*Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at

issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eight Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk

from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842).

Where, as here, the sole Defendant is a corporation that employs medical care providers, liability is established by first establishing that the private corporation's employees have engaged in wrongful conduct and then demonstrating the corporation is liable as a supervisory official. A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services,* 316 Fed. Appx. 279, 282 (4th Cir. 2009). Wexford cannot be held liable simply because it is the employer of medical providers who allegedly caused Mr. Reinhardt to suffer needless pain when they did not give him efficient pain management or a bottom bunk assignment. Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Mr. Reinhardt does not dispute that he was provided the care as outlined in Dr. Getachew's affidavit and admits that some of the treatment provided was helpful. ECF No. 17 at 1 (stating refusal to provide him with a cane may be a good thing and that physical therapy helps). The frustration Mr. Reinhardt expresses is that the medication provided does not address his pain

adequately even though he has cooperated with prescribed treatment.  *Id*.  He explains that his

request for Neurontin[5] was simply a suggestion and not, as Wexford would have it, his attempt to

dictate to providers what he should be given.  *Id*.  He reiterates that while his pain remains

unaddressed by the medications provided, a cane and bottom bunk assignment should be provided

to ameliorate the pain and that he should not be required to renew his requests for bottom bunk

assignments at each institution to which he is sent.  *Id*. at 2.

There are no allegations raised in the complaint or in Mr. Reinhardt's motion for summary

judgment to support a finding that Wexford engaged in the unconstitutional deprivation of medical

care for a serious medical need.  Even if Mr. Reinhardt had named as defendants the individual

nurses and doctors involved in his care, his complaint would fail.  The conservative course of

treatment provided as an initial response to Mr. Reinhardt's complaint of radicular pain is evidence

that the medical staff were not indifferent to his suffering.  Presumably, if the problem worsens or

persists, additional steps will be taken to address his pain.  Importantly, Wexford is no longer

supervising the medical providers.

Further, there is no evidence on this record that Mr. Reinhardt was actually denied a bottom

bunk assignment or that such a denial continues.  Rather, the crux of his argument is that it takes

more than one sick call slip to get an appointment to speak with someone about such an assignment

and when the appointment occurs, a doctor is not consulted.  *See e.g.* ECF No. 15-4 at 84

(Reinhardt explained to Nurse Practitioner: "Its not y'all I'm upset with, its just Wexford" and

---

[5]    Mr. Reinhardt states that he heard from others that Neurontin helped with their chronic
pain and when he "did try one 800mg" dose the "pain was numb all night."  ECF No. 17 at 1.  To
the extent the withdrawal of Neurontin as an option for pain management is an implied basis for
liability, there is no evidence that Wexford authored that policy change; rather, DPSCS made the
decision to limit severely the availability of Neurontin to the inmate population.  *See* ECF No. 15-
5 at 2, ¶6 (Affidavit of Dr. Getachew).

indicating he was upset about the time it takes for sick calls to be answered). Assuming that allegation is true, it alone does not support an Eighth Amendment claim of deliberate indifference. Access to nursing staff or other medically trained personnel for review of routine requests and determination of whether a referral to a provider is warranted, *i.e.*, triage of the numerous requests received daily, does not support a finding of reckless disregard or deliberate indifference.

On the record before the court Defendant Wexford is entitled to summary judgment in its favor; Mr. Reinhardt's motion will be denied. A separate Order follows.


November 18, 2019                               /s/
                                        DEBORAH K. CHASANOW
                                        United States District Judge